**ADOLPH COORS COMPANY,**
**Petitioner-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 74–1468.**

United States Court of Appeals, Tenth Circuit.

Argued March 25, 1975.

Decided July 22, 1975.

Rehearing Denied Aug. 25, 1975.

---

Gene W. Reardon, Denver, Colo., for petitioner-appellant.

Robert A. Bernstein, Tax Div. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Jonathan S. Cohen, Tax

Div., Washington, D. C., on the brief), for respondent-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This is an appeal by Adolph Coors Company (taxpayer) from a United States Tax Court decision sustaining the Commissioner of Internal Revenue's determination of federal income tax deficiencies for the years 1965 and 1966 in the amounts of $3,838,154.33 and $1,268,786.83, respectively.

The relevant facts may be summarized as follows. Taxpayer is a Colorado corporation engaged in the production and sale of beer. It uses its own equipment and employees in the construction of improvements and additions to its capital facilities. Taxpayer employed 398 construction personnel (37% of its work force) in 1965 and 580 construction personnel in 1966. Their major tasks consisted of erecting buildings and other improvements and constructing much of the machinery and equipment used in taxpayer's brewing operations.

Although taxpayer maintains this large construction crew, and although it maintains forty-five separate departments for accounting purposes, it has never created a separate department to account for its construction activities. Under its system of accounting the direct costs of construction activities are allocated to various departments and charged to capital assets. However, the indirect or overhead costs of these construction activities are not similarly capitalized. Instead, these expenditures are allocated to an occupancy (general overhead) account. From this account they are reallocated among various production and administrative departments. Production costs are reflected as costs of goods (beer) sold and administrative costs are reflected as ordinary and necessary business expenses. The result is that these construction-related costs are fully deducted by taxpayer in the taxable year in which such costs are incurred.

In 1966 the Internal Revenue Service (IRS) assessed federal income tax deficiencies against taxpayer for the years 1962, 1963 and 1964. These deficiencies were based upon a determination by the IRS that (1) taxpayer had unreasonably accumulated its earnings; (2) certain items of taxpayer's property did not qualify for investment credit purposes under 26 U.S.C. § 38; (3) various deductions relating to two of taxpayer's residences were improper; and (4) indirect costs attributable to the construction of new plant facilities, amounts taxpayer had deducted as operating expenses, represented capital expenditures.

Taxpayer filed a petition in the Tax Court seeking a redetermination of the asserted deficiencies. Following a trial at which all the deficiencies were litigated, the IRS filed a brief which stated, in part:

Respondent hereby abandons the adjustment made in the statutory notice of deficiency in the amount of $405,567.07 for 1962, $560,942.25 for 1963, and $310,866.81 for 1964 . . . . These amounts represented costs of construction overhead and maintenance and costs of engineering department overhead. Respondent also is hereby abandoning adjustments in the amount of $59,009.60 for 1962, $95,931.74 for 1963, and $122,076.56 for 1964. These amounts represent depreciation on construction equipment which respondent determined to be capital expenditures rather than operating expenses. By abandoning these adjustments, the respondent does not concede one way or the other that Adolph Coors Company's accounting treatment for these items is correct. The respondent is merely abandoning any attempt to change Adolph Coors Company's treatment of these items for the taxable years 1962, 1963 and 1964.

The subsequent opinion of the Tax Court, which disposed of the other issues in favor of the taxpayer, stated:

The Commissioner in his brief abandons the disallowances of deductions

made in the deficiency notice . . . representing corporation costs of construction overhead and maintenance and costs of engineering department overhead.

On March 13, 1969, the IRS again assessed deficiencies against the taxpayer, this time for the years 1965 and 1966 in the amounts of $3,838,154.33 and $1,268,-786.83, respectively. The IRS disallowed, *inter alia,* deductions as expenses of the overhead costs of construction on the grounds such amounts represented capital expenditures. It also determined that the capitalization of overhead and other indirect expenses constituted a change of accounting method under section 481 of the Internal Revenue Code of 1954 in the taxable year 1965, and accordingly increased taxpayer's taxable income by $7,042,325.93.

Taxpayer filed a petition in the Tax Court on June 12, 1969, seeking a redetermination of these asserted deficiencies. Trial was held and the Tax Court sustained the assessed deficiencies. Taxpayer appeals from that decision.

■ Relying upon the doctrine of collateral estoppel, taxpayer first contends the Tax Court erred in ruling on the overhead capitalization issue because it was raised in the prior litigation. The doctrine of collateral estoppel is strictly applied in tax cases. *See, e. g., Trapp v. United States,* 177 F.2d 1 (10th Cir. 1949), *cert. den'd,* 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339 (1950). It ". . . is applicable only when an issue identical to that presented in the second case has been raised and fully adjudicated under identical and inseparable relevant facts in a prior action between the same parties involving a different tax year." *Jones v. United States,* 466 F.2d 131, 133 (10th Cir. 1972), *cert. den'd,* 409 U.S.

1125, 93 S.Ct. 938, 35 L.Ed.2d 257 (1973). *See also* CIR v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), 1B Moore's Federal Practice ¶ 0.443[1] (2nd ed. 1974).

■ The overhead capitalization issue was, as taxpayer correctly contends, raised in the first case. However, no findings, either mediate or ultimate, were made with respect thereto, and there was no judicial determination of the issue. To obtain the protection afforded by the doctrine of collateral estoppel an issue must have been raised, litigated and actually adjudged on the merits in the first proceeding.[1] Here, the overhead issue was raised but, because it was abandoned by the IRS, was not judicially determined. Under these circumstances collateral estoppel cannot apply.

■ Taxpayer nonetheless argues that conclusive effect should be given to the issue because it was raised and, although subsequently abandoned unilaterally, could therefore have been determined. We cannot agree. "In all cases . . where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined." *United States v. International Bldg. Co.,* 345 U.S. 502, 505, 73 S.Ct. 807, 809, 97 L.Ed. 1182 (1952).[2]

■ It is next contended that the Tax Court erred in quashing taxpayer's subpoena duces tecum, which directed the IRS to produce "[a]ll reports, data and correspondence (including correspondence between Denver I.R.S. and the National office of I.R.S.) relating to re-

---

1. *See, e. g., CIR v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); 1B Moore's Federal Practice ¶ 0.422[2] and 0.443[1] (2nd ed. 1974). *See also* Restatement, Judgments § 68(2) (1942), which provides: "A judgment on one cause of action is not conclusive in a subsequent action as to questions of fact not actually litigated and determined in the first action."

2. *See also* 1B Moore's Federal Practice ¶ 0.443[4] (2nd ed. 1974): "The requirement that an issue must have been determined by adjudication in the prior action is also significant . . . in situations in which the issue was undoubtedly raised and litigated in the prior action, but . . . was not in fact determined. . . ."

spondent's abandonment of the accounting issues. . . ." We disagree. The IRS argued, at the hearing on its motion to quash the subpoena, that the requested information was privileged and irrelevant. Taxpayer responded by admitting that possibility, and thereafter failed to show a relevant purpose for the information. Based upon these facts we must conclude that the Tax Court properly quashed the subpoena duces tecum. Taxpayer now asserts that the purpose of the subpoena was "to expose the Commissioner's ploy to circumvent the rule of collateral estoppel." That argument, however, was not raised below and will not be considered for the first time on appeal.

■ Taxpayer next asserts that the Tax Court erred in approving the IRS's change in its method of accounting. We do not believe the method of accounting used by taxpayer "clearly reflects income" as required by 26 U.S.C. § 446.[3] As stated earlier, taxpayer deducts, as operating expenses, the indirect costs of constructing its capital assets. The effect of this accounting procedure is twofold. The deduction of such costs and their concomitant omission from capital assets will understate the cost basis of said assets and will cause the cost of goods sold in a given year to be overstated. This will have the result of understating, and thus improperly reflecting, that year's income. And, any distortion in the cost basis of capital assets, normally recoverable through depreciation, will affect income in future years.

■ Moreover, the deduction of these costs is expressly prohibited by the Internal Revenue Code. Title 26 U.S.C. § 263(a) provides that "[n]o deduction shall be allowed for—(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." This includes the costs of self-

construction and construction related expense items. See CIR v. Idaho Power Co., 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974); 26 C.F.R. § 1.263(a)–2 (1974).

Having determined that taxpayer's method of accounting did not clearly reflect income, the IRS took appropriate measures, under the authority of 26 U.S.C. § 446(b), to conform taxpayer's method of accounting to the requirements of 26 U.S.C. § 263(a). This necessitated various adjustments pursuant to 26 U.S.C. § 481. That statute provides, inter alia, that where taxable income for any taxable year is computed under a method of accounting different from that utilized to compute taxable income for a preceding taxable year then "there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer." And, 26 C.F.R. § 1.481–1(a)(1) (1975) amplifies the meaning of a change in method of accounting to include a change in the overall method of accounting for gross income or deductions, or a change in the treatment of an item. See also 26 C.F.R. § 1.446–1(e)(2)(ii)(a) (1975).

Taxpayer contends that such determination, computations and adjustments made by the IRS in this regard are both speculative and clearly erroneous. It makes numerous allegations of error but has failed to support any of these arguments with specific facts or legal authority. Our examination of the record discloses no clear error. Accordingly, we must affirm .

Affirmed.

---

**3.** 26 U.S.C. § 446(b) provides: "If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."