T.C. Memo. 2012-45

UNITED STATES TAX COURT

CHRISTINA JEANNINE LETOURNEAU, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13457-09.                    Filed February 21, 2012.

Christina Jeannine LeTourneau, pro se.

Charles W. Gorham, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  Petitioner is a U.S. citizen.  In 2005 she resided in

France and earned wages as a flight attendant, working roundtrip international

flights based out of London.  On her 2005 U.S. income tax return she excluded all these wages from her gross income, claiming the foreign earned income exclusion under section 911.[1]  Respondent determined that only a portion of her wages were eligible for the exclusion, resulting in a $2,594 deficiency in her 2005 Federal income tax.

The issues for decision are:  (1) whether, pursuant to the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital, U.S.-Fr., Aug. 31, 1994, 1963 U.N.T.S. 67, Tax Treaties (CCH) para. 3001 (Convention), petitioner's 2005 wages are exempt from U.S. taxation; (2) whether pursuant to section 911 she is entitled to a larger foreign earned income exclusion than respondent has allowed; and (3) whether pursuant to section 901 she is entitled to any amount of foreign tax credit.  Petitioner resided in France when she filed her petition.

## FINDINGS OF FACT

In 1999 petitioner began working in France on a five-year work visa.  In 2004 France granted her a permanent resident card.  By then she was commuting

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

from France to London for her work as a flight attendant for United Airlines, Inc. (United).

During 2005 United paid petitioner wages for flight attendant services she performed from December 2004 through November 2005. She performed these services on roundtrip international flights between London Heathrow Airport and various international destinations, primarily in the United States.[2]

United prepared duty time apportionment tables for all these flights. It prepared such tables annually for the use of flight attendants who are based outside the United States. These tables summarize the time on duty for a flight attendant according to the standard times allocated for such activities as checking

---

[2]During the period she worked to earn the wages United paid her in 2005, petitioner performed flight attendant services on 3 roundtrip flights between London Heathrow Airport and Los Angeles International Airport, 14 roundtrip flights between London Heathrow Airport and Chicago O'Hare International Airport, 15 roundtrip flights between London Heathrow Airport and Washington Dulles International Airport, 13 roundtrip flights between London Heathrow Airport and San Francisco International Airport, 5 roundtrip flights between London Heathrow Airport and New York John F. Kennedy International Airport, 1 flight from London Heathrow Airport to Paris Charles de Gaulle Airport to Washington Dulles International Airport and back to London Heathrow Airport, and 1 flight from London Heathrow Airport to Frankfurt Airport to Washington Dulles International Airport and back to London Heathrow Airport.

in for a flight, boarding, taxiing in and out, flying over the United States, flying over international waters, flying over foreign countries, deplaning, and customs.[3]

For 2005 United issued petitioner a Form W-2, Wage and Tax Statement, reporting $43,569 in wages and zero Federal tax withholdings. On her 2005 Form 1040, U.S. Individual Income Tax Return, petitioner reported these wages but, attaching Form 2555-EZ, Foreign Earned Income Exclusion, excluded the entire amount from gross income.

On March 16, 2006, petitioner filed a Déclaration Préremplie Simplifiée - Revenus 2005 with French income tax authorities and reported her income from United for tax year 2005. This document does not show how much income tax, if any, was paid to French authorities.[4] United provided petitioner U.K. Forms P60, End of Year Certificate, showing U.K. Pay-As-You-Earn income tax withholdings

---

[3]For purposes of preparing the duty time apportionment tables, United considers the United States to be the continental United States, Alaska, and Hawaii and the air or water 12 nautical miles outside the land; a foreign country to be the foreign country's land and the air or water 12 nautical miles outside the land; and international water and airspace to be what is between the United States and a foreign country. To prepare the duty time apportionment tables, United examines flight segments from a sample of flights over a 7- to 10-day period twice a year. Adjustments are made to the tables when there is a route change, an equipment change, or a change in schedule time.

[4]On February 18, 2005, petitioner paid 400 euro in income tax to France as the first installment of tax due for tax year 2004. The 400 euro payment was refunded to petitioner in 2005.

of 237 British pounds sterling (pounds) for the U.K. tax year ending April 5, 2005, and 263 pounds for the U.K. tax year ending April 5, 2006.

In auditing petitioner's 2005 Form 1040, respondent calculated the allowable amount of petitioner's foreign earned income exclusion using United's duty time apportionment tables to determine the time she worked in and over foreign countries.[5] In this manner he determined that 36.13% of her wages, or $15,741, was attributable to time worked in and over foreign countries and that only this portion of her wages qualified for the foreign earned income exclusion under section 911. In the notice of deficiency respondent disallowed $27,872 of petitioner's claimed foreign earned income exclusion, resulting in a $2,594 deficiency.[6]

## OPINION

The taxpayer generally bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a)(1). If the taxpayer introduces "credible evidence" with respect to relevant factual issues and meets other requirements, the

---

[5]The auditor, lacking duty time apportionment tables for 2005, used tables from 1999.

[6]At trial respondent's counsel conceded that the notice of deficiency contains a computational error and that the proper amount of the disallowed foreign earned income exclusion should have been $27,828 ($43,569 of total wages less the $15,741 attributable to foreign countries).

burden as to those factual issues may shift to the Commissioner.  Sec. 7491(a).

"Credible evidence" is evidence the Court would find sufficient upon which to base

a decision on the issue in the taxpayer's favor, absent any contrary evidence.  See

Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

As discussed infra, petitioner has failed to present credible evidence--despite

being given additional time after trial--as to any relevant factual issue, particularly as

to whether any greater portion of her 2005 wages was attributable to her services in

foreign countries than respondent has determined and as to whether she paid any tax

to France in 2005.  Accordingly, the burden of proof does not shift to respondent.

## I.  Effect of the Convention

Petitioner contends that her 2005 wages are exempt from U.S. income

taxation pursuant to the Convention.  Petitioner cites article 15, paragraph 3, of the

Convention, which provides:

> Notwithstanding the preceding provisions of this Article,
> remuneration derived by a resident of a Contracting State in respect of
> an employment exercised as a member of the regular complement of a
> ship or aircraft operated in international traffic shall be taxable only in
> that State.

Although this provision on its face seems to favor petitioner's position, it

cannot be read in isolation.  Unlike many foreign countries, the United States taxes

its citizens on their worldwide income.  <u>Filler v. Commissioner</u>, 74 T.C. 406, 410

(1980); <u>see</u> sec. 61(a) ("gross income means all income from whatever source

derived").  To reserve its right to tax its citizens on the basis of the provisions of the

Internal Revenue Code without regard to the provisions of a treaty or convention,

the United States typically includes a so-called saving clause in its tax treaties and

conventions.  See <u>Filler v. Commissioner</u>, 74 T.C. at 410.  The Convention contains

such a saving clause in article 29, paragraph 2, which provides in relevant part:

"Notwithstanding any provision of the Convention except the provisions of

paragraph 3, the United States may tax its residents, as determined under Article 4

(Resident), and its citizens as if the Convention had not come into effect."

Although paragraph 3 of article 29 of the Convention provides that certain

articles of the Convention take precedence over the saving clause, article 15, upon

which petitioner relies, is not among those provisions.  Accordingly,

notwithstanding the provisions of article 15, paragraph 3 of the Convention,

petitioner is subject to U.S. taxation on her wages earned while residing in

France.[7]  See Filler v. Commissioner, 74 T.C. at 410 (construing saving clause under 1967 Convention between the United States and France).

On brief petitioner contends that respondent's application of the saving clause discriminates against her in violation of article 25 (Non-Discrimination), paragraph 1 of the Convention, which provides:

> Individuals who are nationals of a Contracting State and residents of the other Contracting State shall not be subjected in that other State to any taxation or any requirement connected therewith that is other or more burdensome than the taxation and connected requirements to which individuals who are nationals and residents of that other State in the same circumstances are or may be subjected.

As applied to petitioner's circumstances, this provision merely ensures that the taxation of her wages by France is no more burdensome than the taxation by France of individuals who are French citizens and residents.  Thus article 25 does not provide a basis for the relief petitioner seeks.

---

[7]Consistent with this result, the Department of the Treasury technical explanation of art. I of the Convention states:  "If, however, the French resident is also a citizen of the United States, the saving clause permits the United States to include that income in the worldwide income of the citizen and subject it to tax under the normal Code rules."  Treasury Department Technical Explanation of the Convention, Tax Treaties (CCH) para. 3060, at 75,251.  The explanation of art. 15 states:  "A U.S. citizen resident in France who * * * is a crew member on a ship or airline operated in international traffic, is, nevertheless, taxable in the United States on his remuneration by virtue of the saving clause of paragraph 2 of Article 29 (Miscellaneous Provisions), subject to the special rule of subparagraph 1(b) of Article 24 (Relief From Double Taxation)."  Id.

On brief petitioner suggests that any decision in this case is premature until, pursuant to article 26 of the Convention, the competent authorities of the United States and France have had an opportunity to consider the possible discriminatory impact of respondent's "audit system" on international flight attendants who are citizens of the United States and residents of France. Article 26, paragraph 1 of the Convention would allow petitioner to present her case to the competent authority of the United States. Rev. Proc. 2006-54, 2006-2 C.B. 1035, describes the procedures to be followed in requesting such assistance. It provides that when an issue is pending with the Tax Court, competent authority assistance is available only with the consent of the Associate Chief Counsel (International). Id. sec. 7.03, 2006-2 C.B. at 1042. Petitioner does not allege that she or any other similarly situated taxpayer has filed for competent authority assistance, nor has she convincingly shown that there exists a probability of double taxation as might warrant the assistance of the U.S. competent authority. We disagree that it is premature to decide this case.

II. Foreign Earned Income Exclusion Under Section 911

Section 911(a) allows a "qualified individual" to exclude from gross income "foreign earned income". Foreign earned income is "the amount received by such

individual from sources within a foreign country * * * which constitute earned income attributable to services performed by such individual". Sec. 911(b)(1)(A).

Respondent concedes that petitioner is a qualified individual for purposes of section 911. He contends, however, that a portion of her wages was not earned in a foreign country and thus is ineligible for the exclusion.

Section 911 does not define "foreign country". The regulations provide:

> The term "foreign country" when used in a geographical sense includes any territory under the sovereignty of a government other than that of the United States. It includes the territorial waters of the foreign country (determined in accordance with the laws of the United States), the air space over the foreign country, and the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the foreign country and over which the foreign country has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources. [Sec. 1.911-2(h), Income Tax Regs.]

Consistent with this regulation, this Court has held that a U.S. taxpayer is allowed the foreign earned income exclusion only with respect to wages earned while in or over foreign countries and not for wages earned in international airspace or in or over the United States. Rogers v. Commissioner, T.C. Memo. 2009-111. This Court reasoned that because international airspace, like international waters, is not under the sovereignty of a foreign government, international airspace is not a "foreign country" for purposes of section 911. Id.; see Clark v. Commissioner, T.C.

Memo. 2008-71 (international waters are not a foreign country for purposes of section 911); Struck v. Commissioner, T.C. Memo. 2007-42 (same).

Petitioner suggests that such analyses misconstrue the regulation's literal language, which states that the term "foreign country" "includes", rather than "means", certain things. Petitioner seems to suggest that because the regulation does not expressly exclude international airspace from the definition of foreign country, it must be included. In rejecting a similar argument and upholding the validity of the regulation, the Court of Appeals for the Seventh Circuit stated: "When read in its entirety and in common sense fashion, the rule supports the position that sovereignty is an essential component of the definition [of] a 'foreign country' under" the regulation. Arnett v. Commissioner, 473 F.3d 790, 798 (7th Cir. 2007), aff'g 126 T.C. 89 (2006).

Petitioner has treated all her wages as earned in a foreign country. This treatment is clearly incorrect. For the relevant period, all her flights flew through international airspace and landed in the United States.

Respondent calculated the allowable amount of petitioner's foreign earned income exclusion using United's duty time apportionment tables to determine the

time she worked in and over foreign countries.[8]  Petitioner complains that the tables reflect only aggregated data rather than actual times on specific flights.  Petitioner further asserts that respondent has used these tables "as an impermissible substitute" for required rulemaking under the Administrative Procedure Act.

The issue is not one of rulemaking but of proof.  If petitioner could prove that she spent more time flying over foreign countries than the duty time apportionment tables show, she might be entitled to a greater foreign earned income exclusion than respondent has allowed.  See Rogers v. Commissioner, T.C. Memo. 2009-111.  But petitioner has made no such showing and has failed to establish or even suggest a more reliable allocation method.

Petitioner suggests that she is entitled to exclude all her wages from gross income for 2005 because she did so in prior years without any challenge from the

_____

[8]Petitioner complains that the Internal Revenue Service (IRS) auditor used duty time apportionment tables from 1999.  Petitioner's complaint rings hollow.  Although she has had access to 2005 duty time apportionment tables at all relevant times, she never provided them to the IRS during the audit or to the Court during this proceeding.  According to the trial testimony of a United representative, United's duty time apportionment tables do not vary significantly from year to year.  In any event, respondent compared the total flight time determined using the 1999 duty time apportionment tables with petitioner's actual flight time in 2005 using her per diem reports prepared by United and determined that using the 1999 tables made no significant difference.  Petitioner has not shown otherwise.

IRS. Respondent is not precluded from challenging treatment of an item merely because he has failed to challenge it in the past. See Coors v. Commissioner, 60 T.C. 368, 406 (1973), aff'd, 519 F.2d 1280 (10th Cir. 1975); see also Rose v. Commissioner, 55 T.C. 28, 32 (1970).

We sustain respondent's determination that $27,828 of petitioner's 2005 wages is ineligible for the section 911 exclusion.

III. Foreign Tax Credit Under Section 901

A taxpayer may elect to take a credit against his or her U.S. income tax liability for income taxes paid or accrued to a foreign country or U.S. possession.[9] Sec. 901(a). Subject to the limitation of section 904, the amount of the credit is "[i]n the case of a citizen of the United States * * *, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country".[10] Sec. 901(b)(1).

---

[9]Regulations require an individual taxpayer to claim the foreign tax credit by filing Form 1116, Foreign Tax Credit (Individual, Estate, or Trust), and complying with certain conditions. Sec. 1.905-2, Income Tax Regs. Respondent has not raised and we do not consider any issue as to whether petitioner has properly elected to claim the foreign tax credit.

[10]Sec. 904(a) generally limits the allowable foreign tax credit to the amount of U.S. tax on foreign income. Because we reject petitioner's claim to the foreign tax credit on other grounds, we need not and do not address the application of the sec. 904(a) limitation to petitioner's circumstances.

A cash basis taxpayer generally must take the foreign tax credit for the year in which the foreign taxes were paid, unless the taxpayer makes an irrevocable election to instead take foreign tax credits in the year in which foreign taxes accrue. Sec. 905(a); sec. 1.905-1(a), Income Tax Regs. Respondent asserts, and petitioner does not dispute, that for 2005 she was a cash basis taxpayer and made no election to take foreign tax credits in the year in which foreign taxes accrued rather than in the year in which they were paid. We deem petitioner to have conceded these matters. Accordingly, petitioner is entitled to the foreign tax credit, if at all, only with respect to foreign taxes she paid in 2005.

A.  Taxes Allegedly Paid to France

Petitioner contends that she is entitled to the foreign tax credit for income taxes paid to France. But she has failed to show that she actually paid tax to France in 2005.

Although petitioner filed with French tax authorities a Déclaration Préremplie Simplifiée - Revenus 2005 on which she reported her United wages for tax year 2005, the return does not show how much, if any, income tax was paid to France. The evidence shows that she paid 400 euro in early 2005 as an installment of tax due on her 2004 French income tax, but this amount was also refunded to her in 2005. Accordingly, we do not regard this as an amount paid to France

in 2005.[11] Petitioner has otherwise provided no receipt for payment, canceled check, or other evidence of taxes paid to France for 2005.[12] Following trial the Court kept the record open for 30 days to allow petitioner to produce evidence that she paid tax to France in 2005, but petitioner failed to do so. Having failed to show that she paid tax to France in 2005, she has failed to establish entitlement to the foreign tax credit with respect to any such tax.

B. Taxes Paid to the United Kingdom

Petitioner further contends that she is entitled to the foreign tax credit for the relatively small amounts that United withheld from her wages to pay United Kingdom taxes. Respondent concedes that petitioner paid taxes in 2005, through withholding, to the United Kingdom.[13] Respondent contends, however, that

---

[11]The regulations provide that an amount is not treated as tax paid to a foreign country to the extent it is reasonably certain to be refunded. Sec. 1.901-2(e)(2), Income Tax Regs. Perforce, an amount that the foreign country actually refunds during the same year is not treated as paid.

[12]Petitioner provided an untranslated document, written in French, which appears to relate to 2005 and which she contends is a bill from Trésor Public (French taxing authority) for 1,002 euro. But she provided no proof that she paid the amount shown as due.

[13]Cf. Cont'l Ill. Corp. v. Commissioner, 998 F.2d 513, 516-517 (7th Cir. 1993) (holding that to show entitlement to the foreign tax credit, the taxpayer must show not merely that foreign tax was withheld but also that it was paid to the lawful taxing authority), aff'g on this point and rev'g in part T.C. Memo. 1991-66;

(continued...)

petitioner is not entitled to the foreign tax credit with respect to these taxes because the income upon which the United Kingdom imposed these taxes has been excluded from petitioner's U.S. gross income under section 911. We agree.

As a general rule, no foreign tax credit is permitted insofar as the foreign tax paid is allocable to income excluded from gross income under section 911. Sec. 911(d)(6); sec. 1.911-6(a), Income Tax Regs.; see also Faltesek v. Commissioner, 92 T.C. 1204, 1207 (1989). As previously discussed, respondent has allowed petitioner the foreign earned income exclusion with respect to her wages for services performed in and over foreign countries, including the United Kingdom. Insofar as the U.K. taxes in question were imposed upon the same U.K. income for which petitioner has been allowed the foreign earned income exclusion, she is not entitled to also claim the foreign tax credit for these U.K. taxes.

Petitioner has presented no evidence regarding the tax base for the taxes she paid to the United Kingdom but merely states in her posttrial brief that the U.K.

---

[13](...continued)
Wilcox v. Commissioner, T.C. Memo. 2008-222 (same); see Rev. Rul. 57-516, 1957-2 C.B. 435 ("The credit provided in section 901 of the Code is not based on tax withheld by a foreign country * * * during the taxable year, since tax withheld is merely an advance collection of what may or may not be an actual tax liability.").

taxes were "withheld from the total income."[14]  We take judicial notice of several

authorities that strongly suggest that the United Kingdom withholds tax from a

nonresident only for employment carried out within the United Kingdom.  See

Income Tax (Trading and Other Income) Act 2005, ch. 2, sec. 6 (U.K.) (available at

http://www.legislation.gov.uk/ukpga/2005/5/section/6) (last visited Feb. 1, 2012)

("Profits of a trade * * * [of] a non-UK resident are chargeable to tax under this

Chapter only if they arise--(a) from a trade carried on wholly in the United

Kingdom, or (b) in the case of a trade carried on partly in the United Kingdom and

partly elsewhere, from the part of the trade carried on in the United Kingdom.") ;

see also R (Davies & another) v. Commissioners for H.M. Rev. & Customs, (2011)

UKSC 47 (appeal taken from Eng.); H.M. Rev. & Customs, IR20, Residents and

non-residents Liability to tax in the United Kingdom, para. 5.2 (1999) (available at

http://www.hmrc.gov.uk/pdfs/ir20.pdf) (last visited Feb. 1, 2012) ("If you are not

resident in the UK, we will generally tax you on any UK pensions or on earnings

from employment the duties of which are carried on in this country."  Duties

performed by a non-U.K. resident member of an aircraft crew are

---

[14]Both petitioner and respondent characterize these taxes as "commuter" taxes.  Although the record does not reveal the precise nature of the "commuter" tax, respondent does not dispute that the tax paid was a tax on "income, war profits, and excess profits" as required for eligibility for the foreign tax credit under sec. 901(b)(1).

generally treated as performed in the United Kingdom only if "the flight does not extend to a place outside the UK"). On the basis of these authorities, it seems most likely that the taxes petitioner paid to the United Kingdom in 2005 were attributable to her duties carried on in the United Kingdom. Petitioner has not shown otherwise. Because she has excluded her United Kingdom-based income under section 911(a), she is not entitled to the foreign tax credit with respect to these U.K. taxes.

We conclude and hold that petitioner has failed to establish entitlement to the foreign tax credit for 2005.

To reflect the foregoing and respondent's concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.